## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA )
)
v. )          CASE NO.: 8:24-CR-211-TDC
)
HOAU-YAN WANG, )
)
    Defendant. )

## DEFENDANT DR. HOAU-YAN WANG'S
## MOTION TO DISMISS THE INDICTMENT AND MEMORANDUM IN SUPPORT

Joanne Zimolzak (19342)
DYKEMA GOSSETT PLLC
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600
jzimolzak@dykema.com

Jennifer L. Beidel (*Pro Hac Vice)*
Mark Chutkow (*Pro Hac Vice*)
Timothy Caprez (*Pro Hac Vice)*
Emma Blackwood (*Pro Hac Vice*)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
Email: jbeidel@dykema.com
mchutkow@dykema.com
tcaprez@dykema.com
eblackwood@dykema.com

*Counsel for Dr. Hoau-Yan Wang*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ......................................................................................................... 3

    A.   Dr. Wang is a Neuroscience Researcher and Tenured Medical School Professor at University 1, as well as an "Advisor and Consultant" to Company 1. ............................... 3

    B.   Company 1 Submits NIH Grant Applications. .................................................................. 4

    C.   Dr. Wang Had a Limited Role in the NIH Grant Applications. .......................................... 5

    D.   Dr. Wang is Indicted in the District of Maryland. .................................................................. 7

STANDARD OF REVIEW .............................................................................................................. 7

ARGUMENT .................................................................................................................................. 10

    A.   The Indictment Fails to Allege Materiality. ...................................................................... 10

    B.   The Major Fraud (Count 1) and False Statements (Count 4) Charges are Time-Barred. ... 13

    C.   Count 1 Fails Because the Indictment Does Not Allege That Dr. Wang Executed a Scheme to Obtain at Least $1 Million. ............................................................................................ 16

    D.   Count 1 is Unconstitutional Because Venue is Improper in This District. ........................ 19

    E.   The Indictment's Vague Allegations Do Not Provide Dr. Wang Fair Notice of the Charges Against Him. ....................................................................................................................... 22

CONCLUSION............................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Dunn v. United States*,
  284 U.S. 390 (1932)......................................................................................................... 8

*Hale v. United States*,
  89 F.2d 578 (4th Cir. 1937) ............................................................................................. 9

*Hamling v. United States*,
  418 U.S. 87 (1974)........................................................................................................... 9

*Kungys v. United States*,
  485 U.S. 759 (1988).........................................................................................................11

*Martin v. United States*,
  299 F. 287 (4th Cir. 1925)................................................................................................ 8

*Musacchio v. United States,*
  577 U.S. 237 (2016) ....................................................................................................... 13

*Neder v. United States*,
  527 U.S. 1 (1999)........................................................................................................10, 11

*Russell v. United States*,
  369 U.S. 749 (1962)......................................................................................................... 9

*Sanabria v. United States*,
  437 U.S. 54 (1978)......................................................................................................... 17

*Sec'y of State For Defence v. Trimble Nav. Ltd.*,
  484 F.3d 700 (4th Cir. 2007)........................................................................................... 6

*Selvam v. United States*,
  570 F. Supp. 3d 29 (E.D.N.Y. 2021) .............................................................................. 6

*Toussie v. United States*,
  397 U.S. 112 (1970)................................................................................................... 13, 14

*United States ex rel. Berge v. Bd. of Trs.*,
  104 F.3d 1453 (4th Cir. 1997)..........................................................................................11

*United States ex rel. Taylor v. Boyko*,
  39 F.4th 177 (4th Cir. 2022)........................................................................................... 12

*United States v. Alkhayyat*,
  No. 3:22-CR-00138-KDB-DSC, 2023 U.S. Dist. LEXIS 14857 (W.D.N.C. Jan. 30, 2023)...... 8

*United States v. Barringer*,
  25 F.4th 239 (4th Cir. 2022) ...........................................................................................11

*United States v. Bolden*,
  325 F.3d 471 (4th Cir. 2003)........................................................................................... 9

ii

*United States v. Bowens*,
224 F.3d 309 (4th Cir. 2000) .................................................................................. 19, 20

*United States v. Brandon*,
298 F.3d 307 (4th Cir. 2002) .............................................................. 8, 9, 12, 13, 16

*United States v. Brewbaker*,
87 F.4th 563 (4th Cir. 2023) ...................................................................................... 3, 7

*United States v. Cabrales*,
524 U.S. 1 (1998) ............................................................................................................ 19

*United States v. Cobb*,
905 F.2d 784 (4th Cir. 1990) ........................................................................................ 8

*United States v. Colton*,
231 F.3d 890 (4th Cir. 2000) ...................................................................................... 17

*United States v. Cook,*
84 U.S. 168 (1872) .......................................................................................................... 13

*United States v. Diana Shipping Servs.,*
985 F. Supp. 2d 719 (E.D. Va. 2013) ...................................................................... 17

*United States v. Doost,*
3 F.4th 432 (D.C. Cir. 2021) ...................................................................................... 17

*United States v. Ebersole,*
411 F.3d 517 (4th Cir. 2005) ...................................................................................... 19

*United States v. Elbaz,*
332 F. Supp. 3d 960 (D. Md. 2018) .......................................................................... 23

*United States v. Elshinawy*,
228 F. Supp. 3d 520 (D. Md. 2016) ............................................................................ 9

*United States v. Engle,*
676 F.3d 405 (4th Cir. 2012) ........................................................................................ 3

*United States v. Fogel,*
901 F.2d 23 (4th Cir. 1990) ........................................................................................ 22

*United States v. Gaudin*,
515 U.S. 506 (1995) ........................................................................................................ 11

*United States v. Hamilton*,
699 F.3d 356 (4th Cir. 2012) .................................................................................. 10, 11

*United States v. Harris*,
919 F. Supp. 2d 702 (E.D. Va. 2013) ...................................................................... 14

*United States v. Hooker*,
841 F.2d 1225 (4th Cir. 1988) .......................................................................... 8, 9, 22

*United States v. Jefferson*,
674 F.3d 332(4th Cir. 2012) .................................................................................. 18, 20

*United States v. Kingrea*,
  573 F.3d 186 (4th Cir. 2009) ........................................................................... 9

*United States v. Matzkin*,
  14 F.3d 1014 (4th Cir. 1994) ........................................................................... 8

*United States v. Missler*,
  414 F.2d 1293 (4th Cir. 1969) ......................................................................... 8

*United States v. Oceanpro Indus., Ltd.*,
  674 F.3d 323 (4th Cir. 2012) ................................................................... 19, 20

*United States v. Perry*,
  757 F.3d 166 (4th Cir. 2014) ........................................................................... 9

*United States v. Reitmeyer,*
  356 F.3d 1313 (10th Cir. 2004) .............................................................. 14, 21

*United States v. Robinson,*
  275 F.3d 371 (4th Cir. 2001) ......................................................................... 20

*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ................................................................................. 19, 20

*United States v. Roof*,
  225 F. Supp. 3d 438 (D.S.C. 2016) .................................................................. 7

*United States v. Sarihifard*,
  155 F.3d 301 (4th Cir. 1998) ......................................................................... 10

*United States v. Shrader*,
  675 F.3d 300 (4th Cir. 2012) ......................................................................... 17

*United States v. Smith*,
  373 F.3d 561 (4th Cir. 2004) ................................................................... 13, 14

*United States v. Smith*,
  44 F.3d 1259 (4th Cir. 1995) ........................................................................... 8

*United States v. Spivey*,
  956 F.3d 212 (4th Cir. 2020) ......................................................................... 20

*United States v. Sterling,*
  860 F.3d 233 (4th Cir. 2017) ......................................................................... 20

*United States v. Sterling,*
  860 F.3d 233 (4th Cir. 2017) ......................................................................... 20

*United States v. Strock*,
  982 F.3d 51 (2d Cir. 2020) ............................................................................... 6

*United States v. Terry*,
  257 F.3d 366 (4th Cir. 2001) ........................................................................... 8

*United States v. Thomas*,
  367 F.3d 194 (4th Cir. 2004) ........................................................................... 9

*United States v. Treacy*,
  No. 5:13cr00018, 2014 U.S. Dist. LEXIS 200228 (W.D. Va. Jan. 28, 2014) .................... 14, 15

*United States v. Vanderhorst*,
  2 F. Supp. 3d 792 (D.S.C. 2014) ................................................................................. 8

*United States v. Verclas*,
  No. GJH-18-160, 2019 U.S. Dist. LEXIS 766 (D. Md. Jan. 3, 2019) .............. 14, 17, 19, 20, 21

*United States v. Walgreen Co.*,
  78 F.4th 87 (4th Cir. 2023) ..................................................................................... 11

*United States v. Walsh*,
  194 F.3d 37 (2d Cir. 1999) ....................................................................................... 9

*United States v. Whyte*,
  918 F.3d 339 (4th Cir. 2019) ................................................................................. 10

*United States v. Wilson,*
  118 F.3d 228 (4th Cir. 1997) ................................................................................ 13

*United States v. Yasinov*,
  No. 1:22-cr-00448-JRR, 2024 U.S. Dist. LEXIS 78205 (D. Md. Apr. 30, 2024) ...................... 9

**Statutes**

18 U.S.C. § 1001 ................................................................................................ 18

18 U.S.C. § 1031 .................................................................................... 8, 12, 20, 22

18 U.S.C. § 1343 ................................................................................................. 8

**Rules**

Fed. R. Civ. P. 10 ................................................................................................ 6

Fed. R. Crim. P. 7 ...................................................................................... 7, 13, 23

Fed. R. Crim. P. 12 ......................................................................................... 7, 13

Fed. R. Crim. P. 18 ............................................................................................ 19

Fed. R. Evid. 201 ............................................................................................... 6

v

**INTRODUCTION**

Almost two decades ago, in 2005, Defendant Dr. Hoau-Yan Wang ("Dr. Wang") began consulting for Company 1,[1] a publicly traded biopharmaceutical company, regarding the development of a novel treatment for Alzheimer's disease.  For more than 15 years, the research Dr. Wang and Company 1 conducted was widely accepted by dozens of reputable neuroscience journals, approved for trial by the Food and Drug Administration ("FDA"), and funded, in part, by the National Institutes of Health ("NIH").  Then, on August 18, 2021, a group of financially-motivated short sellers of Company 1's stock changed everything by filing a Citizen Petition with the FDA, requesting that it halt Company 1's drug trials based on claimed research misconduct.[2] The FDA and NIH apparently disagreed with the short sellers' allegations, as evidenced by the fact that these agencies have permitted clinical trials on Alzheimer's patients and federal funding to continue to this day, without any interruption or pause.[3]

Dr. Wang finds himself in this forum fighting for his freedom because the Department of Justice ("DOJ") apparently decided it knew better than its scientific counterparts at the FDA and NIH.  While "short and distort" schemes can have potentially disastrous economic effects and can stifle scientific advancement, such schemes become even more harmful when law enforcement

---

[1] The anonymized terms used in this motion are used in the same way as those in the Indictment.

[2] *See* Citizen Petition from Labaton Sucharow, Docket No. FDA-2021-P-0930 (filed Aug. 23, 2021), available at https://www.regulations.gov/docket/FDA-2021-P-0930/document (last visited Oct. 27, 2024).

[3] *See* Response Letter from FDA CDER to Labaton Sucharow (Feb. 10, 2022), available at https://www.regulations.gov/docket/FDA-2021-P-0930/document (last visited Oct. 27, 2024); [Company 1] Announces Completion of an Interim Safety Review of Oral [Drug A] On-going Phase 3 Trials (Sept. 24, 2024), available at https://www.cassavasciences.com/news-releases/news-release-details/cassava-sciences-announces-completion-interim-safety-review-0 (last visited Oct. 27, 2024).

jumps in to advance the short sellers' agenda.  That is exactly what happened here, when FBI agents knocked on Dr. Wang's door just five days after the Citizen Petition was filed.

Having become wedded to this faulty agenda, the Government has reached too far and produced an Indictment that must be dismissed for five reasons, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(A)(i) and (B)(v).  First, the Indictment fails to allege that any supposed misrepresentations by Dr. Wang were material to the NIH's funding decisions, highlighted by the fact that the NIH continues to fund Drug A despite the public allegations from the short sellers.  Second, the major fraud count (Count 1) and the false statements count (Count 4) are untimely because they are premised on a faulty assumption that those violations are continuing offenses.  Third, the major fraud count fails to allege that Dr. Wang fraudulently sought a grant valued at more than $1 million, the statutory threshold for the offense.  Fourth, the major fraud count also violates Dr. Wang's constitutional right to be tried only in a District where the crime was supposedly committed.  Fifth, the entire Indictment should be dismissed because it does not give Dr. Wang fair notice of his supposed conduct that constituted the charged crimes.

For the reasons set forth more fully below, Dr. Wang respectfully requests that the Court dismiss the Indictment with prejudice.[4]

---

[4] If the Court agrees with some but not all of these conclusions, then Dr. Wang moves the Court, in the alternative, to strike the defective counts from the Indictment and leave the remainder intact.

**FACTUAL BACKGROUND[5]**

**A.      *Dr. Wang is a Neuroscience Researcher and Tenured Medical School Professor at University 1, as well as an "Advisor and Consultant" to Company 1.***

Dr. Wang is a tenured medical school professor at University 1 in the Southern District of New York, where he teaches a full-time courseload and conducts neuroscience research.  (Doc. 1 ¶ 1).  Beginning nearly two decades ago, in 2005, Dr. Wang became an "advisor and consultant" for Company 1, a publicly traded biopharmaceutical company based in the Western District of Texas.  (*Id.* ¶¶ 2-3).  Company 1's work focused on the development of Test A and Drug A, which were designed to test for and treat Alzheimer's disease.  (*Id.* ¶ 2).  Dr. Wang is not alleged to have been an employee, officer, or director of Company 1 at any time or to have possessed the power to bind Company 1 to any contract or other economic commitment.  (*Id.* ¶ 3).

Starting in 2005, Dr. Wang began conducting research on Drug A using several laboratory techniques, including one called Western blotting.  (*Id.* ¶ 9).  Western blotting is a largely visual laboratory technique that allows a trained scientist to detect a specific protein by developing and analyzing a visible "band" on x-ray film.  (*Id.*).  Separate from the visual image of a Western blot "band," the test's results can be quantified using a process called densitometry, which compares the darkness and thickness of various bands to determine the relative protein amounts in each sample.  (*Id.*).

---

[5] On a motion to dismiss, "[a] district court is limited to considering the factual allegations in the indictment and must accept them as true."  *United States v. Brewbaker*, 87 F.4th 563, 579 (4th Cir. 2023) (citing *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012)).  That said, Dr. Wang does not agree that any of the Indictment's allegations are true or accurate and expects that a jury would reject the Government's claims at trial.

### B.    Company 1 Submits NIH Grant Applications.

Starting in May 2015, Company 1 began to submit proposals to the NIH for grants related to Drug A and Test A.  (*Id.* ¶ 10).  Company 1 submitted these proposals electronically from the Western District of Texas to the District of Maryland.  (*Id.* ¶¶ 2, 6, 15, 17, 22).  From 2017 to 2021, the NIH awarded Company 1 roughly $16 million in connection with Company 1's proposals.  (*Id.*).  Those payments were made electronically from NIH facilities in the District of Maryland to Company 1 in the Western District of Texas.  (*Id.* ¶¶ 2, 10).

More specifically, Company 1 allegedly submitted the following five grant proposals to the NIH from August 2016 to July 14, 2020, in the following amounts:

| Grant | Date(s) of Proposal(s) | Amount Requested | Amount Awarded |
|---|---|---|---|
| **Grant 1** | "multiple" proposals from Aug. 2016 to June 2018 (*id.* ¶ 15) | N/A | $5,113,068 (*id.* ¶ 15) |
| **Grant 2** | "multiple" proposals from Jan. to June 2018 (*id.* ¶ 17) | N/A | $3,906,146 (*id.* ¶ 17) |
| Proposal 1 | January 12, 2018 (*id.* ¶ 18) | $118,975 (*id.* ¶ 18) | |
| **Grant 3** | January 17, 2019 (*id.* ¶ 20) | N/A | $2,499,896 (*id.* ¶ 21) |
| **Grant 4** | July 14, 2020 (*id.* ¶ 22) | N/A | $2,710,220 (*id.* ¶ 23) |
| **Grant 5** | January 5, 2017 (*id.* ¶ 24) | $250,298 (*id.* ¶ 24) | $1,855,233 (*id.* ¶ 26) |
| Proposal 2 | November 18, 2019 (*id.* ¶ 25) | N/A | $450,142 (*id.* ¶ 26) |

The Indictment alleges that Dr. Wang "was indirectly paid" from the grant proceeds "through University 1," (*id.* ¶ 10), while at the same time claiming that Dr. Wang's stock options and bonus plan from Company 1 were "tied to Company 1's stock performance," rather than to the awarding of NIH grant funding (*id.* ¶ 12).  The Government does not, and cannot, allege that Dr. Wang received a single dollar of raise or salary increase that is directly tied to NIH grant

4

funding or that a single email, wire transfer or communication travelled directly between Dr. Wang in the Southern District of New York and the NIH in the District of Maryland.

### C.    Dr. Wang Had a Limited Role in the NIH Grant Applications.

The Indictment does not allege that Drug A is ineffective or dangerous to consumers in any way or that the FDA or NIH took any action to stop Drug A's trials or to pull its funding. Instead, the Indictment alleges that somewhere in the voluminous applications for Grants 1 through 5, which span a total of 985 pages and include 77 figures, 131 Western blots, and 21 tables, Dr. Wang provided information that the Government generally alleges to have been "false." (*Id.* ¶¶ 10, 13, 14(a), (b), 15, 17, 18, 25, 29, 32, 34, 39). Aside from these overly broad allegations, the Indictment contains only a single specific allegation of supposed falsity, claiming that Dr. Wang produced a single false Western blot image ("Figure 1") that was also published in scientific, peer-reviewed journal articles. (*Id.* ¶¶ 16, 18, 19). The Indictment does not allege that Dr. Wang was the sole author of any of those three articles, admitting the articles were published by Dr. Wang "and others." (*Id.* ¶¶ 16, 19). Nor does the Indictment allege that this supposed false statement was "material"—i.e., that it had any impact on FDA's or NIH's decision to continue to support and fund Drug A's development.

And, for purposes of the allegedly "false statement" in Figure 1, the Indictment does not allege that Dr. Wang's research has been discredited. In fact, Figure 1 was published in 2017 by *Neurobiology of Aging*, which learned of the public allegations involving Company 1 and conveyed them to Dr. Wang and the other authors in 2022. In response, *Neurobiology of Aging* received "a detailed response, including images of relevant uncropped western blots and photomicrographs, as the editor requested." *See* Expression of Concern regarding Hoau-Yan Wang et al., *PTI-125 Binds and Reverses an Altered Conformation of Filamin A to Reduce Alzheimer's Disease Pathogenesis*, 55 Neurobiol. Aging 99 (2017; submitted Dec. 13, 2016). *Neurobiology of*

*Aging* then had the material "evaluated by an independent expert with relevant methodological expertise" and had the manuscript "scanned by AI-based figure proofing software (i.e., Proofig)." *Id.* After "all available input was considered by the handling editor and Editor-in-Chief," "[o]verall, the editors did not find compelling evidence of data manipulation intended to misrepresent the results." *Id.* In other words, the single figure the Government claims to have been manipulated was cleared by the publisher using AI-based software and remains in circulation today.

What's more, the Government recognizes that much of Dr. Wang's work underlying the submissions of Grants 1 through 5 took place in connection with his research scholarly journal articles published in 2012 and 2017. (*Id.* ¶¶ 16, 18, 20, 22, 24). The articles referenced in the Indictment were based on work submitted to journals, and thus completed well before, January 24, 2012 and December 13, 2016. *See* Hoau-Yan Wang et al., *Reducing amyloid-related Alzheimer's disease pathogenesis by a small molecule targeting filamin A*, 32 J. Neurosci. 9773 (2012; submitted Jan. 24, 2012); Hoau-Yan Wang et al., *PTI-125 Binds and Reverses an Altered Conformation of Filamin A to Reduce Alzheimer's Disease Pathogenesis*, 55 Neurobiol. Aging 99 (2017; submitted Dec. 13, 2016).[6] Later, in or around November 2020, Dr. Wang and others submitted a different scholarly journal article, but even the Government concedes that article was only relied upon in Grant 4, which does not form the basis of any of the charged conduct. (*Id.* ¶

---

[6] The journal articles are "incorporated . . . by reference" in and "integral" to the Indictment (*see* Doc. 1 ¶¶ 16, 18, 20, 22, 24), so they are properly considered in this motion to dismiss. *See, e.g., Selvam v. United States*, 570 F. Supp. 3d 29, 38 (E.D.N.Y. 2021) (citing *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (internal quotations omitted in original)); *accord. Sec'y of State For Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (explaining that courts "may consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."). They are also publicly accessible and subject to judicial notice by the Court pursuant to Federal Rule of Evidence 201.

22); *see also* H-Y Wang et al., *PTI-125 Reduces Biomarkers of Alzheimer's Disease in Patients*, 7 J. Prev. Alzheimer's Dis. 256 (2020).  In sum, by the end of 2016, Dr. Wang had fully completed his work that underlaid Grants 1-3 and 5.  This includes Proposals 1 and 2, on which the charged conduct is based.

### D.    Dr. Wang is Indicted in the District of Maryland.

On June 27, 2024, the Grand Jury charged Dr. Wang with four offenses arising out of his research for Company 1.  Count 1 charges Dr. Wang with major fraud against the United States, in violation of 18 U.S.C. §§ 1031(a) and 2, for his "[s]ubmission of fraudulent Proposal 1 to NIH." (*Id. ¶* 32).  Counts 2 and 3 charge Dr. Wang with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, stemming from automated clearing house ("ACH") transfer requests that were allegedly submitted to the Federal Reserve Board for partial payments on Proposal 1 of $32,815 on March 22, 2019 (Count 2) and on Proposal 2 of $125,026 on June 18, 2021 (Count 3).  (*Id.* ¶ 37).  Count IV charges Dr. Wang with one count of making a false statement in "a filed submission to NIH in connection with fraudulent Proposal 2."  (*Id.* ¶ 39).  In other words, only Proposal 1 and Proposal 2 form the basis for the Indictment's four charged counts, despite the Indictment's references to Grants 1 through 5.

### STANDARD OF REVIEW

The Federal Rules of Criminal Procedure require every indictment to set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  A defendant may move to dismiss an indictment when it contains a "defect," including a "lack of specificity" and a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  When assessing a motion to dismiss an indictment, a court must "determine[s] whether the indictment's factual allegations, if true, state[] the charged . . . violation."  *Brewbaker*, 87 F.4th at 579; *United States v. Roof*, 225 F. Supp. 3d 438, 441-42 (D.S.C. 2016) ("A motion to dismiss an

7

indictment tests whether the indictment sufficiently charges the offense the defendant is accused of committing." (citing *United States v. Vanderhorst*, 2 F. Supp. 3d 792, 795 (D.S.C. 2014))).  And "[i]f an indictment contains multiple counts, each count is viewed as a separate indictment for purposes of determining its sufficiency."  *United States v. Smith*, 44 F.3d 1259, 1264 (4th Cir. 1995) (citing *Dunn v. United States*, 284 U.S. 390, 393 (1932)); *see United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988) ("[T]he law in this circuit does not support the . . . position that a missing element can be read into an indictment from another count -- at least not when the challenged count fails to incorporate the other counts by reference").  In determining whether the indictment articulates the alleged offense sufficiently, a court must accept all allegations as true, "regard the indictment in a 'practical,' rather than 'purely technical,' manner," and determine whether it sufficiently articulates the alleged offense.  *United States v. Alkhayyat*, No. 3:22-CR-00138-KDB-DSC, 2023 U.S. Dist. LEXIS 14857, at *2-3 (W.D.N.C. Jan. 30, 2023) (quoting *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994)); *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990) (quoting *United States v. Missler*, 414 F.2d 1293, 1297 (4th Cir. 1969), *cert. denied*, 397 U.S. 913 (1970) (quoting *Martin v. United States*, 299 F. 287 (4th Cir. 1925))); *see United States v. Terry*, 257 F.3d 366, 371 (4th Cir. 2001) (King, J., concurring) ("It is elementary that a motion to dismiss implicates only the legal sufficiency of [the indictment's] allegations, not the proof offered by the Government.").

An effective indictment must clearly outline the essential elements of the charge, specify the exact nature of the allegations, and provide adequate notice to the defendant.  *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) ("An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions

for the same offense." (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974))); *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003) (citing *Smith*, 44 F.3d at 1263 (citing *Hamling*, 418 U.S. at 117)).   Merely echoing the language of the statute is inadequate; the indictment must present specific factual information that clarifies the precise nature of the charges.  *Brandon*, 298 F.3d at 310 (citing *Hamling*, 418 at 117-18).   To achieve dismissal, the defendant must demonstrate that the allegations, even if accurate, do not amount to a prosecutable offense.  *United States v. Yasinov*, No. 1:22-cr-00448-JRR, 2024 U.S. Dist. LEXIS 78205, at *4 (D. Md. Apr. 30, 2024) (citing *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004)); *accord Hale v. United States*, 89 F.2d 578, 579 (4th Cir. 1937) ("It is elementary that every ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient."

The notice requirement "derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation" and "is only half of the question."  *Hooker*, 841 F.2d at 1230; *Russell v. United States*, 369 U.S. 749, 761 (1962).   There is also a separate requirement that "derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present."  *United States v. Kingrea*, 573 F.3d 186, 193 (4th Cir. 2009) (quoting *Hooker*, 841 F.2d at 1230).   "[F]actual particularity must 'ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'"  *United States v. Elshinawy*, 228 F. Supp. 3d 520, 537 (D. Md. 2016) (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citation omitted in original)).   Courts therefore apply "'heightened scrutiny' to ensure that every essential element of an offense has been charged."  *United States v. Perry*, 757 F.3d 166, 191 (4th Cir. 2014) (citing *Kingrea,* 573 F.3d at 191).

**ARGUMENT**

Different Government agencies are pursuing perplexingly contradictory objectives regarding Company 1 and its Alzheimer's drug: FDA and NIH continue to provide unabated support and funding for Company 1's development of a treatment for Alzheimer's; while DOJ seems intent on lending credence to the self-serving theories of opportunistic short sellers by making an example of an elderly Taiwanese immigrant, while choosing not to pursue Company 1. The Indictment must be dismissed for the following reasons: (1) all counts fail to allege that the supposed misrepresentations were material to the NIH's funding decisions, especially given that the NIH continues to fund the project; (2) the major fraud and false statements claims are time-barred; (3) the major fraud claim does not meet the $1 million statutory threshold required to allege a major fraud; (4) the major fraud claim violates Dr. Wang's constitutional right to be tried in the venue where the alleged crime occurred; and (5) the Indictment is so vague that it fails to put Dr. Wang on notice of which of his alleged conduct is criminal. Dr. Wang respectfully requests that the Court dismiss the Indictment with prejudice.

### A. The Indictment Fails to Allege Materiality.

Under applicable law, each count of the Indictment must be supported by an allegation of a *material* misrepresentation. *See United States v. Whyte*, 918 F.3d 339, 350 n.13 (4th Cir. 2019) (for major fraud, requiring an allegation of "materially false of fraudulent pretenses, representations, or promises"); *Neder v. United States*, 527 U.S. 1, 25 (1999) (for wire fraud, noting "materiality of falsehood is an element"); *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012) (for false statements, noting that the false statement must be "material to a matter within the jurisdiction of the [government] agency" (citing *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998))). A false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decision-making body to which it was addressed." *Neder,* 527

10

U.S. at 28 (citing *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *Kungys v. United States*, 485 U.S. 759, 770 (1988)); *United States v. Barringer*, 25 F.4th 239, 251 (4th Cir. 2022) (citing *Hamilton*, 699 F.3d at 362).

As established above, of the five grant applications (Doc. 1 ¶¶ 15, 17, 18, 20, 22, 24, 25) that Company 1 submitted to the NIH, and the three journal articles (*id*. ¶¶ 16, 19) that were cited in those applications, the Indictment specifically identifies only *one* piece of data that was allegedly manipulated by Dr. Wang: a single Western blot image (Figure 1). The date this piece of data was allegedly manipulated must logically precede the date it was first submitted for publication to Neurobiology of Aging on December 13, 2016. Even if Dr. Wang manipulated data on this *one* image, which he vehemently denies, the Government has not specified—and no reasonable jury could find—that one image altered in December 2016 *materially* impacted the NIH's decision to fund Proposal 1, sometime after its alleged January 2018 submission date.

The Indictment does not allege any facts showing that Company 1's extensive submissions to the NIH did not contain other truthful information sufficient for the NIH to make the same funding decisions, or that, but for the inclusion of Figure 1 in Company 1's submissions, the NIH would not have funded research into Drug A. The Government cannot allege such facts because they are not true—Figure 1, a single image, cannot have been a *material* factor in the NIH's funding decisions. *See, e.g., United States ex rel. Berge v. Bd. of Trs*., 104 F.3d 1453, 1462 (4th Cir. 1997) ("Assuming *arguendo* that all of Berge's allegations were true and [the university] had made these false statements, it is hard to imagine that the NIH's decision-making would have been influenced by them."); *accord United States v. Walgreen Co*., 78 F.4th 87, 93 (4th Cir. 2023) ("explaining how the court upheld the dismissal of a False Claims Act claim when the relator failed to allege how or whether a misrepresentation about corporate certificates of authorization impacted

11

government decision-making on claims for payment" (citing *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189, 202 (4th Cir. 2022))).

Figure 1 was merely one of many included in Company 1's prodigious submissions to the NIH, as described above.  Given the breadth and depth of this documentation, it is unreasonable to suggest that a single Western blot image, such as Figure 1, could have been material to the NIH's funding decisions, given the abundance of other substantive and accurate data presented in the applications.  This is especially true given that the Government has not (and cannot) allege that the FDA, NIH, or the journal that published Figure 1 have expressed any substantive concerns with the efficacy of Drug A or taken *any* actions to discontinue support or funding of Drug A's development in light of the alleged falsity of Figure 1.

The Indictment alleges that the "NIH's grant-approval process involved multiple steps and rounds of review within NIH, in consultation with an external peer-review panel, and included evaluations of the applications across a number of metrics" and that the NIH "relied upon truthful representations from an applicant" when doing so.  (Doc. 1 ¶ 7).  But the Indictment does not describe the NIH's "metrics" or how the NIH made its decisions.  As a result, the Indictment fails to allege that the misrepresentations in Figure 1, and the other vague allegations of misrepresentations in the Indictment, were material to the NIH's decision-making process.  And if they were material, why is NIH continuing to support and fund Company 1's proposal after this alleged misrepresentation was uncovered?  It is doing so because Company 1's proposal is sound and supported by overwhelming evidence, and Dr. Wang's alleged misrepresentations were inconsequential to NIH's decision-making.

The Indictment fails to plead facts that, if true, establish the materiality element of Counts 1 through 4.  By itself, that is grounds for dismissal of the Indictment.  *See Brandon*, 298 F.3d at

12

310 ("[S]imply parroting the language of the statute in the indictment is insufficient."); *Id*. ("[T]he indictment must also contain a 'statement of the essential facts constituting the offense charged.'") (quoting Fed. R. Crim. P. 7(c)(1)); *see also* Fed. R. Crim. P. 7(c)(1) (requiring every indictment to set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged"); *id.* 12(b)(3)(B)(iii) (stating that grounds to dismiss an Indictment include when it contains a "defect," including a "lack of specificity").

### B.      The Major Fraud (Count 1) and False Statements (Count 4) Charges are Time-Barred.

The major fraud and false statements counts are time-barred because the Government mistakenly asserts that those statutes are continuing offenses. They are not. The statute of limitations is designed "to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts that the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970); *United States v. Smith*, 373 F.3d 561, 563 (4th Cir. 2004) ("A statute of limitations protects individuals from having to defend against charges 'when the basic facts may have become obscured by the passage of time,' and minimizes 'the danger of official punishment because of acts in the far-distant past.'" (quoting *Toussie*, 397 U.S. at 114)). Once a statute of limitations defense is properly raised, "the Government then bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the statute of limitations period or by establishing an exception to the limitations period." *Musacchio v. United States,* 577 U.S. 237, 248 (2016) (emphasis in original) (citing *United States v. Cook,* 84 U.S. 168, 179 (1872)); *United States v. Wilson,* 118 F.3d 228, 236 (4th Cir. 1997) (when a limitations issue is raised, "[t]he government bears the burden of proving that it began its prosecution within the statute of limitations period").

"Under certain limited circumstances," crimes that "occur over an extended period may be treated as a continuing offense for statute of limitations purposes." *United States v. Treacy*, No. 5:13cr00018, 2014 U.S. Dist. LEXIS 200228, at *6 (W.D. Va. Jan. 28, 2014); *Smith*, 373 F.3d at 563-64 (citing *Toussie*, 397 U.S. at 115). But the Supreme Court has cautioned that "the doctrine of continuing offenses should be applied in only limited circumstances." *Toussie,* 397 U.S. at 115. A crime is deemed a "continuing offense" only if (1) "the explicit language of the substantive criminal statute compels such a conclusion;" or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115.

Applying the *Toussie* test, courts in the Fourth Circuit have held that executing a major fraud is not a continuing offense. *United States v. Verclas*, No. GJH-18-160, 2019 U.S. Dist. LEXIS 766, *18 (D. Md. Jan. 3, 2019) (Hazel, J.). As the Court of Appeals for the Tenth Circuit put it: "each discrete 'execution' of a scheme, rather than the scheme in its entirety," is criminalized by the Act. *United States v. Reitmeyer,* 356 F.3d 1313, 1323 (10th Cir. 2004). And "[t]he discrete nature of a Major Fraud Act violation makes it unlikely Congress intended it to be a continuing offense for statute of limitations purposes." *Id.*; *United States v. Harris*, 919 F. Supp. 2d 702, 708 (E.D. Va. 2013) ("If Congress intended the execution of a scheme [under the Major Fraud Act] to be a continuing offense, it could have clearly stated so." (quoting *Reitmeyer*, 356 F.3d at 1322)).

Likewise, courts in the Fourth Circuit have held that false statements, under 18 U.S.C. § 1001, are not continuing offenses. *Treacy*, 2014 U.S. Dist. LEXIS 200228, at *9. This is because "none of the acts criminalized by Section 1001 clearly contemplate a prolonged course of conduct," but instead "a single act even though there may be continuing effects." *Id.* at *8 (finding that because a false statements charge "could have been 'brought and proved'" once the defendant

14

"submitted the false application, it is clear that it is a discrete crime, not simply one act in a course of conduct"). These courts have reasoned that the aim of the false statements statute is criminalizing "the intrinsic harm of the falsehood itself," not any subsequent ongoing benefit the defendant stands to gain from that falsehood. *Id.* at *10-11.

The statute of limitations for major fraud requires that a prosecution be commenced "not later than 7 years after the offense *is committed*." 18 U.S.C. § 1031(f) (emphasis added). And for false statements, the statute of limitations is 5 years. *Treacy*, 2014 U.S. Dist. LEXIS 200228, at *4; 18 U.S.C. § 3282(a). Here, pre-indictment tolling agreements between the parties added 135 days to the applicable statutes of limitations. *See* Exhibit A (compiling tolling agreements). This means the June 27, 2024 Indictment could permissibly include conduct dating back to February 12, 2017 in the major fraud count and conduct dating back to February 12, 2019 in the false statements counts.

As alleged, then, the following aspects of the scheme to defraud described in the Indictment fall outside the statute of limitations for false statements: (1) the submission of Grant 1 between August 2016 and June 2018; (2) the submission of Grant 2 between January and June 2018; (3) the submission of Proposal 1 in January 2018; (4) the submission of Grant 3 in January 2019; (5) the initial submission of Grant 5 in January 2017; and (6) the publication of the 2012 and 2017 papers that were supposedly reincorporated in various of the grant applications. (Doc. 1 ¶¶ 15-18, 20, 24). And a portion of the submissions of Grant 1, the initial submission of Grant 5, and publication of the 2012 and 2017 papers are likewise outside the statute of limitations for major fraud. (*Id.*).

Perhaps recognizing these timing issues, the Government creatively attempts to premise the major fraud count on the January 12, 2018 "[s]ubmission of fraudulent Proposal 1 to NIH."

15

(Doc. 1 ¶ 32). But the supposed "fraudulent conduct" described to be part of Proposal 1 is a Western blot (Figure 1) that had been included in the 2017 article that was included in the application submitted in connection with Grant 1. (*Id.* ¶¶ 16, 18); *see also* Hoau-Yan Wang et al., *PTI-125 Binds and Reverses an Altered Conformation of Filamin A to Reduce Alzheimer's Disease Pathogenesis*, 55 Neurobiol. Aging 99 (2017; submitted Dec. 13, 2016). In other words, if there was a "major fraud" on the Government connected to Figure 1, it occurred when Grant 1 was submitted in August 2016, which falls outside the statute of limitations.

Similarly, for the false statements count, the Government claims that, on November 18, 2019, "in connection with fraudulent Proposal 2, WANG fabricated the Western blots depicted in multiple figures and made false representations about the results of the experiments depicted." (Doc. 1 ¶ 39). But again the real allegations of fraud in connection with Proposal 2 concern "a citation to one of the published articles referenced above," meaning the articles incorporated in the Grant 1 application, which would again fall outside the statute. (*Id.* ¶ 25). While the Government also claims that Proposal 2 involved "additional Western blots fabricated" and "other false statements and materials omissions" (*id.*), those allegations are so vague that they cannot put Dr. Wang on notice of a charge for false statements that falls within the scope of the statute of limitations. *See Brandon*, 298 F.3d at 310.

Counts 1 and 4 should be dismissed as untimely.

### C.    *Count 1 Fails Because the Indictment Does Not Allege That Dr. Wang Executed a Scheme to Obtain at Least $1 Million.*

The Government's major fraud charge (Count 1) fails because, as charged, it does not reach the required statutory threshold for major fraud of $1 million. The major fraud statute prohibits "knowingly execut[ing], or attempt[ing] to execute, any scheme or artifice with the intent – (1) to defraud the United States; or (2) to obtain money or property by means of false or fraudulent

pretenses, representations, or promises related to a federal grant or contract with a value *of $1 million or more*." *United States v. Verclas,* 2019 U.S. Dist. LEXIS 766, at \*4 (citing 18 U.S.C. § 1031(a)) (emphasis added).

When an Indictment describes numerous potential violations of a statute, a "unit of prosecution" determines "what separates a single violation of the statute from multiple violations." *United States v. Diana Shipping Servs.,* 985 F. Supp. 2d 719, 727 (E.D. Va. 2013) (citing *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012)). Units of prosecution are determined by Congress, not by the prosecution, and start with the statutory text. *Id.* (citing *Sanabria v. United States*, 437 U.S. 54, 69-70 (1978)). If the text alone is insufficient, the court must then consider the legislative history and "the overall statutory scheme," before resolving doubts "in favor of lenity for the accused." *Id.*

While the Fourth Circuit does not appear to have determined the appropriate "unit of prosecution" for a major fraud, other circuits have held that each "execution" of a fraudulent scheme is a "unit of prosecution" because the major fraud act criminalizes the "execution" of the scheme, and not the scheme itself. *United States v. Doost*, 3 F.4th 432, 438 (D.C. Cir. 2021). Likewise, the Fourth Circuit has found that bank fraud "authorizes prosecution for each execution of a scheme to defraud a financial institution, *not* each act in furtherance of such a scheme." *United States v. Colton*, 231 F.3d 890, 908-09 (4th Cir. 2000). To determine each "execution" of a scheme, the Fourth Circuit considers whether the act is "chronologically and substantively independent" from the other acts charged. *Id.* at 909. As a result, "courts have found each in a series of "separate diversions of funds," separate loans, and separate extensions of a loan agreement to be a separate execution" of a scheme that is properly chargeable in a separate count of an indictment. *Id.* Similarly, in analyzing unit of prosecution in the context of the major fraud statute, the D.C. Circuit

17

considered three factors:  (1) "whether an identifiable sum of money can be traced to a specific fraudulent transaction," (2) "whether each charge involved the violation of 'a new and independent obligation to be truthful,'" and (3) whether the language of the indictment "sufficiently describes two or more separate and distinct offenses."  *Doost*, 3 F.4th at 438-39.

Here, the Indictment alleges that Dr. Wang committed major fraud when he caused Proposal 1 to be submitted on January 12, 2018.  (Doc. 1 ¶ 32).  But the value of Proposal 1 was allegedly only $118,975.  (*Id.* ¶ 18).  And even if Proposal 1 was a component of a broader scheme to defraud, major fraud is not a continuing offense (*see supra* Pt. 2), so the Court should consider each execution of the scheme separately and require the alleged execution to meet the statutory threshold of $1 million.  Stated differently, several minor frauds do not a major fraud make.  If one cashes four fraudulently obtained government checks for $250,000, one has committed *four minor* (for Section 1031's purposes) frauds, not *one major* fraud for $1 million, against the Government. *See, e.g., United States v. Jefferson*, 674 F.3d 332, 367(4th Cir. 2012).

The Government tries to meet the $1 million threshold by alleging that Proposal 1 is connected more broadly to Grant 2, which involved a total award of $3,906,146 for the development of Drug A.  (Doc. 1 ¶¶ 17, 18).  But the Government then alleges that Grant 2 involved "multiple applications in response to NIH funding announcements."  (*Id.* ¶ 17).  The Government does not identify whether and how Proposal 1 is connected to these multiple applications nor how much funding the NIH was offering for a particular application to which Proposal 1 is related.  Such details are essential in order to understand the "unit of prosecution" associated with Count 1 and whether the statutory threshold of $1 million has been met for that unit of prosecution.

As pled by the Government, Proposal 1 appears to represent a separately chargeable execution of the alleged major fraud scheme; a separate diversion of funds from the NIH that came with an independent obligation to be truthful in the submittal; and an identifiable sum of money. Therefore, Proposal 1 – a separate unit of prosecution – must be over $1 million to satisfy the statutory threshold for major fraud.  Because it is not, Count 1 must be dismissed.

### D.        *Count 1 is Unconstitutional Because Venue is Improper in This District.*

The Indictment's charge of major fraud also violates Dr. Wang's constitutional rights to face prosecution only where he allegedly committed the crime charged.  The U.S. Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl.3, and that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the *State and district wherein the crime shall have been committed*." *Id.* amend. VI (emphasis added).  These constitutional mandates are codified in the Federal Rules of Criminal Procedure, which require that, absent an applicable exception, "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.

When a criminal statute does not contain an express venue provision, venue is "determined from the nature of the crime alleged and the location of the act or acts constituting it."  *United States v. Cabrales*, 524 U.S. 1, 5 (1998); *see also Verclas*, 2019 U.S. Dist. LEXIS 766, at *5 (citing *United States v. Ebersole,* 411 F.3d 517, 524 (4th Cir. 2005)).  To determine venue, a court must first "identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 328 (4th Cir. 2012) (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999)).  This is true because "venue is limited 'to the place of the essential *conduct* elements of the offense,'" *Verclas*, 2019 U.S. Dist. LEXIS 766, at *6 (quoting *United States v. Bowens*, 224 F.3d

19

309 (4th Cir. 2000)) (emphasis added), which can be defined in terms of the effects of that essential conduct, *Oceanpro*, 674 F.3d at 328 (citing *Bowens*, 224 F.3d at 314). Venue does not attach in jurisdictions where only the "circumstance" elements of an offense occurred, even if those circumstance elements are otherwise essential elements of the crime. *Id.* at 328 (holding "the 'circumstance' elements of an offense, even if essential, are of 'no moment' to a venue determination") (citing *Bowens*, 224 F.3d at 311); *United States v. Spivey*, 956 F.3d 212, 215 (4th Cir. 2020) ("Not all elements of a criminal offense are relevant, however, for determining where an offense was committed. Courts instead distinguish between 'circumstance' and 'conduct' elements.") (citing *Bowens*, 224 F.3d at 310-11).[7]

In determining the essential conduct elements of an offense, courts analyze "the key 'verbs' or actions sanctioned by the statute." *United States v. Sterling,* 860 F.3d 233, 241 (4th Cir. 2017) (citing *Rodriguez-Moreno*, 526 U.S. at 279-80). To that end, acts that are "merely 'preparatory' to the underlying offense and its essential conduct" and "acts which occur only in furtherance of the crime or after a crime is complete" do not provide a basis for venue. *Verclas*, 2019 U.S. Dist. LEXIS 766, at *6 (citing *Jefferson*, 674 F.3d at 367) (finding venue improper for a wire fraud case because although acts in furtherance of the crime occurred in the relevant district, "the physical act of transmitting the wire communication for the purposes of executing the fraud scheme," did not).

Here, then, the Court must determine the essential conduct elements of the charged crime of major fraud. For major fraud, this Court has held that "the only essential conduct is the knowing execution or attempt to execute the scheme." *Verclas*, 2019 U.S. Dist. LEXIS 766, at *8. This

---

[7] When multiple counts are alleged in an indictment, venue must be proper on each count. *United States v. Robinson,* 275 F.3d 371, 378 (4th Cir. 2001); *United States v. Sterling,* 860 F.3d 233, 240 (4th Cir. 2017).

Court analyzed the essential conduct elements of major fraud in *Verclas*. There, the State Department invited non-profits to submit grant proposals. *Id.* at *1. The Indictment alleged that the defendant defrauded the United States by falsely representing her New York-based corporation to be a non-profit, which she certified when she personally submitted the grant application from New York. *Id.* at *2. The State Department awarded the defendant more than $1 million from the District of Maryland. *Id.* at *2-3. This Court held that the defendant "executed her alleged scheme to defraud and obtain money from the Government when she submitted her fraudulent grant application from her offices in New York." *Id.* at *8. "Once the Defendant submitted the application, the scheme had been executed." *Id.* at *9 (citing *Reitmeyer*, 356 F.3d at 1318 (holding that scheme had been executed once defendant filed a claim for equitable adjustment)).

Here, when read as a whole, the Indictment alleges that Dr. Wang, presumably either acting from University 1 in the Southern District of New York or from his home in the Eastern District of Pennsylvania, "caused to be submitted" Proposal 1 by Company 1 in the Western District of Texas. (*Id.* ¶¶ 1-2, 17-18). As in *Verclas*, the submission of Proposal 1 is what executes the alleged scheme, and Dr. Wang's portion of that submission is alleged to have occurred in the Southern District of New York, while the remainder is alleged to have occurred in the Western District of Texas. But instead of pursuing an Indictment in either of those jurisdictions, the Government chose to bring this case in this District, where the NIH is headquartered. In fact, despite the Government having convened grand juries in both the Western District of Texas and Eastern District of Pennsylvania to investigate this matter, Dr. Wang finds himself facing federal criminal charges in a District to which he is not alleged to have sent a single email or wire transfer, let alone set foot in, prior to his initial appearance in this matter. Count 1 should be dismissed for failure to bring this charge in the proper venue.

21

### E.    The Indictment's Vague Allegations Do Not Provide Dr. Wang Fair Notice of the Charges Against Him.

Dr. Wang has not received fair notice from the language of the Indictment as to which aspects of his voluminous research over decades supposedly makes him guilty of the offenses charged. All four counts of the Indictment arise out of one-of-two funding proposals, Proposal 1 or Proposal 2, which were allegedly submitted by Company 1 to the NIH. (*Id*. ¶¶ 32, 37, 39). Nowhere in the Indictment does the Government allege that Dr. Wang authored either of these proposals, because he did not. Nor does the Indictment allege that Dr. Wang submitted either proposal to the NIH, because he did not. Instead, in order to improperly shoehorn its prosecution of Dr. Wang into various fraud statutes, the Indictment baldly and repeatedly concludes that Dr. Wang somehow "caused the submission" of the proposals to the NIH without alleging any facts indicating *how, when,* or *why* he did so. (*See, e.g., id.* ¶¶ 10, 14(a), 15, 18, 20, 22, 24, 25). Such conclusory allegations are not sufficient to apprise Dr. Wang of the charges against him so he can prepare his defense, which renders all four counts of the indictment defective. *See United States v. Fogel*, 901 F.2d 23, 25 (4th Cir. 1990) ("One of the principal purposes of an indictment is to apprise the accused of the charge or charges against him so he can prepare his defense."); *Hooker*, 841 F.2d at 1230 (this notice requirement "derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation . . ."). This is especially true given that the specific laboratory work conducted by Dr. Wang that is allegedly connected to the charged conduct (Proposals 1 and 2) was completed for 2012 and 2016 journal submissions, when Proposals 1 and 2 were supposedly submitted years later in 2018 and 2019 by someone other than Dr. Wang. (Doc. 1 ¶¶ 16, 18, 25).

Moreover, the Government vaguely concludes that Dr. Wang intended to and did execute a scheme to defraud without alleging any facts to support that allegation, other than his supposed

manipulation of the image in Figure 1 *for publication in a journal article before December 13, 2016.* Several reasonable alternate readings of the Indictment are that Dr. Wang misunderstood the standards for submission of Figure 1 to the journal or made a mistake in his preparation of that image for submission to the journal. Neither is a crime. The Government has failed to allege facts that connect the journal submission in December 2016 to Company 1's proposal submission in January 2018, such that, if true, this Court could determine all the elements of major fraud are met. *See* Fed. R. Crim. P. 7(c)(1) (requiring every indictment to set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged").

And, aside from the allegations about Figure 1, the Government vaguely alleges that Dr. Wang made false statements to the NIH about "the mechanism by which Drug A was designed to treat" and "by which Test A was designed to detect Alzheimer's disease," "the improvement of certain indicators associated with advanced Alzheimer's disease neurodegeneration in patients treated with Drug A," "the nature and scope of his scientific experiments," "the truth and accuracy of the images and information provided as representations of the underlying scientific experiments," "the results of his scientific research . . ., including Western blotting," including in "journal articles published by" Dr. Wang and others. (Doc. 1 ¶¶ 14(b), (c), 15-18, 20, 22, 24, 25). These allegations must be viewed in the context of Dr. Wang's decades of research and Company 1's hundreds of pages of NIH submissions. Viewed in that light, none of these vague allegations are sufficient to permit Dr. Wang to ascertain what aspects of his conduct are supposedly fraudulent. The Indictment should be dismissed as too vague to apprise Dr. Wang of the charges against him.[8]

---

[8] Alternatively, the Court should order the Government to file a bill of particulars to provide these essential details, especially given that the Government produced millions of pages of discovery to the defense. *See United States v. Elbaz*, 332 F. Supp. 3d 960, 982-83 (D. Md. 2018) (Chuang, J.)

## CONCLUSION

For these reasons, Defendant Hoau-Yan Wang respectfully requests that this Court dismiss the Indictment in its entirety.

Dated:  October 28, 2024

Respectfully submitted,

*/s/ Joanne Zimolzak*

Joanne Zimolzak (19342)
DYKEMA GOSSETT PLLC
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600
jzimolzak@dykema.com

Jennifer L. Beidel (*Pro Hac Vice)*
Mark Chutkow (*Pro Hac Vice*)
Timothy Caprez (*Pro Hac Vice)*
Emma Blackwood (*Pro Hac Vice*)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
Email: jbeidel@dykema.com
mchutkow@dykema.com
tcaprez@dykema.com
eblackwood@dykema.com

*Counsel for Dr. Hoau-Yan Wang*

---

(directing the Government to produce a bill of particulars itemizing the allegedly false statements at issue, particularly given the 2.5 million pages of discovery produced).

24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 28th day of October, 2024, I filed the foregoing Motion to Dismiss Indictment using the Court's CM/ECF system. The CM/ECF system sent a "Notice of Electronic Filing" to all counsel of record who have entered an appearance in this matter.

Dated: October 28, 2024                    Respectfully submitted,

                                           */s/ Joanne Zimolzak*
                                           Joanne Zimolzak (19342)
                                           DYKEMA GOSSETT PLLC
                                           1301 K Street NW
                                           Suite 1100 West
                                           Washington, D.C. 20005
                                           (202) 906-8600
                                           jzimolzak@dykema.com

25