# EXHIBIT 11

# THE CITY UNIVERSITY OF NEW YORK

# POLICY REGARDING THE DISPOSITION OF ALLEGATIONS OF RESEARCH MISCONDUCT

1. GENERAL STATEMENT OF POLICY

   A fundamental purpose of the University is to foster an environment that promotes the responsible conduct of research and similar educational activities (collectively, "research"), discourages Research Misconduct, and deals promptly with any Allegations or Evidence of possible Research Misconduct. (Definitions of "Research Misconduct", "Allegation", "Evidence" and other terms in this Policy that appear with initial capital letters are set forth in Section 12 below.) It is the University's basic expectation that all research conducted by members of the University community will adhere to the highest ethical and moral standards. This Policy describes the procedures to be followed by the University in connection with any Allegation that University faculty, staff, post-doctoral associates, and/or students, whether paid by the University or through other funding sources, may have engaged in Research Misconduct. This Policy is also intended to comply with the requirements of applicable regulatory agencies and the sponsors of research.

2. APPLICABILITY

   This Policy applies only to Allegations of Fabrication, Falsification, and Plagiarism in research, as such terms are defined in Section 12 below, and not to any other kind of academic misconduct or dishonesty. This Policy applies to all research conducted by University faculty, staff, post-doctoral associates, and/or students, regardless of the academic discipline of the researcher or the sponsorship or source of support for the research. This Policy does not supersede or establish an alternative to any existing University or governmental regulations, procedures, or policies regarding fiscal improprieties, conflicts of interest, ethical treatment of human or animal subjects, or criminal matters, all of which remain in effect.

   It is the University's expectation that all members of the University community will cooperate in reporting suspected Research Misconduct, responding to Allegations, providing relevant Research Records and other relevant information, and participating in Research Misconduct Proceedings.

   This Policy replaces the University's Policy Regarding the Disposition of Allegations of Misconduct in Research and Similar Educational Activities, adopted on June 25, 2007.

3. REPORTING ALLEGATIONS OF RESEARCH MISCONDUCT

   Allegations of Research Misconduct may be brought to the University's attention as follows:

1

- 3.1. Any individual may report suspected Research Misconduct by one or more persons orally or in writing. Such individual (the "Complainant") should address such Allegation to the Research Integrity Officer ("RIO") of the College where the subject of the Allegation (the "Respondent") has an appointment. In cases where the Respondent is a faculty member with joint appointments, the Allegation should be reported to the RIO of the "home College", as determined in accordance with the University's Joint Appointment Guidelines. If the Allegation is reported to the RIO orally, the RIO will contemporaneously create a written record of the Allegation.

- 3.2. If an Allegation is received by another University administrator or identified in the course of another University process, such as an internal audit, the responsible administrator must immediately notify the RIO of the Allegation in writing. The RIO may initiate a Research Misconduct Proceeding regardless of the conduct or outcome of the other University processes.

- 3.3. A regulatory agency or research sponsor may forward an Allegation of Research Misconduct at the University to the Vice Chancellor for Research or his or her designee, and the Vice Chancellor for Research or his or her designee will then determine whether to accept the responsibility of an Inquiry or an Investigation of the Allegation on behalf of the University. If the regulatory agency or research sponsor has conducted an Inquiry, the University's Research Misconduct Proceeding may begin at the Investigation stage. The Vice Chancellor for Research will give notice of the Allegation to the President and the RIO at the appropriate College and, if the Allegation involves sponsored research, the President of the Research Foundation. The University Director for Research Compliance, in collaboration with the RIO, will notify the Respondent of the Allegation.

4. INDIVIDUAL OBLIGATIONS REGARDING INVESTIGATIONS CONDUCTED BY A REGULATORY AGENCY OR RESEARCH SPONSOR

If a University faculty or staff member, post-doctoral associate, or student becomes the subject of an Investigation of any kind conducted by a regulatory agency or research sponsor concerning an Allegation of Research Misconduct, such individual must report the existence of the Investigation immediately in writing to the Chief Academic Officer of his or her College. Upon receiving such notification, the Chief Academic Officer will give notice of the pending Investigation to the Vice Chancellor for Research and, if the pending Investigation involves sponsored research, the President of the Research Foundation. Failure to disclose a pending Investigation pursuant to this section may subject the University faculty or staff member, post-doctoral associate, or student to disciplinary or other appropriate action.

5. CONFIDENTIALITY

In order to protect the privacy and professional reputations of those involved, all Research Misconduct Proceedings will be conducted in a fashion designed to maintain confidentiality. Knowledge of the Research Misconduct Proceedings and the disclosure of the identity of the Respondents and the Complainants will be limited, to the extent possible, to those who need to know, consistent with a thorough, competent, objective, and fair Research Misconduct Proceeding, and as allowed by law. Except as may otherwise be prescribed by applicable law, confidentiality of any Research Records or Evidence from which research subjects might be identified must be maintained. Disclosure of such Research Records or Evidence will be limited to those who have a need to know to carry out a Research Misconduct Proceeding.  All individuals having knowledge of the identity of the Respondents and the Complainants and access to information in any reports or drafts thereof prepared in connection with a Research Misconduct Proceeding must keep such knowledge and information confidential.

6. INQUIRY

   6.1. Upon receipt of an Allegation of Research Misconduct, the RIO will promptly determine whether or not an Inquiry is warranted. An Inquiry is warranted if the Allegation (a) falls within the definition of Research Misconduct in Section 12.17 below; (b) is made against a person to whom this Policy applies; and (c) is sufficiently credible and specific so that potential Evidence of Research Misconduct may be identified. The purpose of an Inquiry is preliminary information-gathering and preliminary fact-finding to determine whether the Allegation warrants a formal Investigation, as described in Section 7 below. An Inquiry is not a formal hearing requiring a full review of all Research Records and Evidence related to the Allegation.

   6.2. Promptly following the RIO's determination of whether or not an Inquiry is warranted, the RIO will consult the Vice Chancellor for Research or his or her designee regarding the determination and, if an Inquiry is warranted, regarding the appropriate scope of the Inquiry and the requirements and procedures for securing related Research Records and Evidence. Either before or at the time the RIO notifies the Respondent of the Allegation as provided in Section 6.3 below, the RIO will secure the related Research Records and Evidence in accordance with Section 8.1 below. If the RIO determines that an Inquiry is NOT warranted, he or she will give notice of such determination and a summary of the Allegation to the President in writing.

   6.3. Once the RIO determines that an Inquiry is warranted, the RIO will notify the Respondent, the Complainant, and the President in writing of the Allegation that has been filed and that an Inquiry will be conducted. If the Inquiry subsequently identifies additional Respondents, the RIO will also notify them in writing.

6.4. Promptly following the RIO's determination that an Inquiry is warranted, the securing of the related Research Records and Evidence, and the notifications required under Section 6.3 above, the RIO will conduct an Inquiry to determine whether an Investigation of the Allegation is warranted. An Investigation is warranted if there is (a) a reasonable basis for concluding that the Allegation falls within the definition of Research Misconduct under Section 12.17 below, and (b) preliminary information-gathering and preliminary fact-finding from the Inquiry indicates that the Allegation may have substance.

6.5. Promptly following the completion of the Inquiry, the RIO will prepare a preliminary Inquiry report that will include the following information: (a) the name and position of the Respondent; (b) a description of each Allegation of Research Misconduct; (c) whether the Allegation is associated with sponsored research, and the related contract or grant number, if any; (d) a summary of the steps taken during the Inquiry; (e) a summary of the results of the Inquiry; (f) the basis for concluding that the Allegation falls within the definition of Research Misconduct; (g) a recommendation to the President as to whether or not an Investigation is warranted; and (h) attachments of any relevant materials used in the Inquiry.

6.6. The RIO will provide the Respondent an opportunity to review and comment on the preliminary Inquiry report. Upon receipt of the comments from the Respondent, the RIO will attach the Respondent's comments to the preliminary Inquiry report and submit this final Inquiry report to the President. Upon receipt of the final Inquiry report, the President, in consultation with the RIO, will make the decision as to whether to refer the case to the Vice Chancellor for Research for an Investigation.

6.7. All efforts should be made to complete the Inquiry as expeditiously as possible, and within 60 calendar days of its initiation, unless circumstances clearly warrant a longer period. If the Inquiry takes longer than 60 calendar days to complete, the Inquiry record must include documentation of the reasons for exceeding the 60-day period.

6.8. If the President decides that an Investigation is NOT warranted, he or she must consult with the Vice Chancellor for Research prior to closing the case. If the Vice Chancellor for Research is in agreement with the President, the matter will be closed and all records of the proceedings treated as confidential pursuant to Section 5 to respect the rights and protect the reputations of all parties involved. All reasonable and practical efforts, if requested and as appropriate, will be undertaken to protect or restore the reputation of the Respondent. The RIO will notify the Respondent and the Complainant of this decision in writing.

6.9. If the President decides that an Investigation is warranted, the RIO will so notify the Respondent and the Complainant in writing within a reasonable time after the President's decision, but before the Investigation begins. The notice to the

       Respondent must include a copy of the final Inquiry report and include a copy of, or refer to, this Policy and the relevant regulations or policies of the applicable regulatory agency and/or research sponsor, if any.

6.10. If the President decides that an Investigation is warranted, he or she will send the final Inquiry report to the Vice Chancellor for Research for Investigation of the case within 14 calendar days of this decision. If the research involved in the Allegation is supported by a grant or contract from a research sponsor, the Vice Chancellor for Research will notify the President of the Research Foundation and the sponsor in accordance with sponsor requirements.

7. INVESTIGATION

    7.1. Upon receipt of the final Inquiry Report, the Vice Chancellor for Research will appoint at least three members of University or College staff or tenured faculty at any College to an Investigation Committee to conduct the Investigation. A majority of the members of the Investigation Committee will be tenured faculty actively involved in research in the same field as the Respondent or a related field, and a majority of the members of the Investigation Committee will be tenured faculty members at Colleges other than the Respondent's College. In addition, no staff member of the Respondent's College may serve on the Investigation Committee.

    7.2. The Investigation will begin within 30 calendar days after the President's referral of the case to the Vice Chancellor for Research. The Investigation Committee will give the Respondent written notice of any new Allegations of Research Misconduct not addressed during the Inquiry or in the initial notice of the Investigation within a reasonable amount of time after a determination to pursue any such new Allegations.

    7.3. The University will take reasonable steps to ensure an impartial and unbiased Investigation to the maximum extent practicable, including participation of persons with appropriate expertise who do not have unresolved personal, professional, or financial conflicts of interest with, or biases against, those involved with the Inquiry or the Investigation.

    7.4. The Investigation Committee will use diligent efforts to ensure that the Investigation is thorough and sufficiently documented and that it includes an examination of all Research Records and Evidence relevant to reaching a decision on the merits of the Allegations. If the Respondent refuses to make any such Research Records and Evidence available for the Investigation, the Investigation Committee may draw adverse inferences from such refusal.

    7.5. The Investigation Committee will comply with the requirements of any applicable regulatory agency and/or research sponsor regarding the interviewing of individuals in connection with the Investigation, will use

    reasonable efforts to interview each Respondent, the Complainant, and any other available person whom the Investigation Committee has identified as having information regarding any relevant aspects of the Investigation, and will keep written records of each interview.

7.6. Upon completion of the Investigation, the Investigation Committee will prepare a draft Investigation report and will provide the Respondent a copy of the draft Investigation report and, concurrently, provide the Respondent and/or his or her union representative or legal counsel, if any, a copy of, or supervised access to, the Evidence on which the draft Investigation report is based. The comments of the Respondent on the draft Investigation report, if any, must be submitted within 30 calendar days of the date on which the Respondent received the draft report.

7.7. The Investigation Committee will promptly review any comments on the draft Investigation report by the Respondent and decide whether or not to make a finding of Research Misconduct. The Investigation Committee will document its decision in the final Investigation report. The final Investigation report will be in writing and will:

    a) Describe the nature of the Allegations of Research Misconduct;

    b) Identify the research sponsor support, if any, and include any grant or contract numbers, grant or contract applications, grants or contracts, and publications listing the support;

    c) Describe the specific Allegations of Research Misconduct for consideration in the Investigation;

    d) Include the University policies and procedures under which the Investigation was conducted;

    e) Identify and summarize the Research Records and Evidence reviewed, and identify any Evidence taken into custody but not reviewed;

    f) For each separate Allegation of Research Misconduct identified during the Investigation, provide a finding as to whether Research Misconduct did or did not occur, and if so:

        i) Identify whether the Research Misconduct was Falsification, Fabrication, or Plagiarism, and if it was intentional, knowing, or in reckless disregard;

        ii) Summarize the facts and the analysis that support the conclusion and consider the merits of any reasonable explanation by the Respondent;

        iii)    Identify the specific research sponsor support, if any;

        iv)    Identify whether any publications need correction or retraction;

        v)    Identify the person(s) responsible for the Research Misconduct; and

        vi)    List any current support or known applications or proposals for support that the Respondent has pending with any research sponsors; and

    g) Include and consider any comments made by the Respondent on the draft Investigation report.

7.8.    The Investigation Committee will submit the final Investigation report to the Vice Chancellor for Research, who will then discuss the report with the President. The President will notify the RIO, the Respondent, and the Complainant of the Investigation Committee's finding as to whether Research Misconduct did or did not occur and, in the case of a finding of Research Misconduct, will decide whether any subsequent disciplinary actions by the University are warranted. If the President finds that subsequent disciplinary actions are warranted as a result of the Investigation, the University may conduct a disciplinary proceeding in connection with the finding in accordance with applicable collective bargaining agreements, the University Bylaws, and/or other applicable policies of the University.

7.9.    If the research involved in the Allegations is or was supported by a grant or a contract, the Vice Chancellor for Research or his or her designee, in collaboration with the Grants Officer at the College, will report and respond to any applicable regulatory agency and/or research sponsor as outlined in Section 9 below and send a copy of any such communication to the President of the Research Foundation.

7.10.    All aspects of the Investigation, including conducting the Investigation, preparing the draft Investigation report and providing it for comment, deciding whether or not to make a finding of Research Misconduct, preparing the final Investigation report, and notifying any applicable regulatory agency and/or research sponsor in accordance with its requirements, will be completed within 120 calendar days of the beginning of the Investigation.

7.11.    If, upon the conclusion of an Investigation, it is determined that the Respondent has NOT committed any Research Misconduct, the matter will be closed, the Vice Chancellor for Research or his or her designee will notify in writing any applicable regulatory agency and/or research sponsor and, if the Allegation involves sponsored research, the President of the Research Foundation, and all records of the proceedings will be treated as confidential pursuant to Section 5 above to respect the rights and protect the reputations of all parties involved. All

reasonable and practical efforts, if requested and as appropriate, will be undertaken to protect or restore the reputation of persons alleged to have engaged in Research Misconduct but against whom no finding of Research Misconduct is made.

8. SECURING OF RESEARCH RECORDS AND EVIDENCE

    8.1. Pursuant to section 6.2 above, the RIO will comply with the requirements and procedures for securing Research Records and Evidence based on consultation with the Office of the Vice Chancellor for Research. Either before or at the time the RIO notifies the Respondent of the Allegation and at any other time during the course of an Inquiry when additional Research Records or Evidence are discovered, the RIO, with any necessary assistance from the Legal Affairs Designee at the College and in consultation with the University Director for Research Compliance, will take all reasonable and practical steps to (a) obtain custody of all the Research Records and Evidence needed to conduct the Research Misconduct Proceeding, (b) inventory the Research Records and Evidence, and (c) sequester the Research Records and Evidence in a secure manner; except that where the Research Records or Evidence encompass scientific instruments shared by a number of users, custody may be limited to copies of the Research Records or Evidence on such instruments, so long as those copies are substantially equivalent to the evidentiary value of the instruments.  To the extent that compliance with the requirements and procedures for securing Research Records and Evidence involves monitoring or inspecting the activity and accounts of individual users of the University's computer resources, the RIO, the Legal Affairs Designee at the College, and the University Director for Research Compliance will comply with the requirements of Section 13(c) of the University's Policy on Acceptable Use of Computer Resources.

    8.2. The RIO will maintain the Research Records and Evidence as required under Section 11 below.

    8.3. If, in accordance with Section 6.4 above, it is determined that an Investigation is warranted, the University Director for Research Compliance, with assistance from the RIO and the Legal Affairs Designee at the College, will perform at the Investigation stage the responsibilities of the RIO regarding the securing and maintenance of Research Records and Evidence as set forth in Sections 8.1 and 8.2 above.

    8.4. Where appropriate, the Respondent will be given copies of, or reasonable supervised access to, the Research Records or Evidence to allow the Respondent to continue to do his or her work during an Inquiry, Investigation, and/or any related disciplinary proceedings.

9. REPORTING AND RESPONDING TO REGULATORY AGENCIES AND RESEARCH SPONSORS

   9.1. The Vice Chancellor for Research or his or her designee, in collaboration with the Grants Officer at the College, will report and respond to all applicable regulatory agencies and research sponsors with regard to Allegations of Research Misconduct in accordance with applicable regulations and sponsor policies. Depending on the regulatory agency or the research sponsor, reporting requirements may begin immediately upon receipt of an Allegation and continue during and after the Research Misconduct Proceedings.  If the Allegation involves sponsored research, the Vice Chancellor for Research or his or her designee will send to the President of the Research Foundation a copy of all such reports and responses to the research sponsor, as well as a copy of any follow-up communications with the research sponsor.

   9.2. The Vice Chancellor for Research or his or her designee will immediately notify the applicable regulatory agency and/or research sponsor providing support for research that is the subject of an Allegation of Research Misconduct, as well as the President of the Research Foundation, if, at any time during any related Research Misconduct Proceeding, the University has reason to believe that any of the following conditions exist:

   a) Health or safety of the public is at risk, including an immediate need to protect human or animal subjects;

   b) Research sponsor resources or interests are threatened;

   c) Research activities should be suspended;

   d) There is reasonable indication of possible violations of civil or criminal law;

   e) Governmental or other action is required to protect the interests of those involved in the Research Misconduct Proceeding;

   f) The University believes the Research Misconduct Proceeding may be made public prematurely, so that the regulatory agency and/or research sponsor may take appropriate steps to safeguard Evidence and protect the rights of those involved; and

   g) The research community or the public should be informed.

10. GENERAL CONSIDERATIONS

   10.1. When being interviewed by the RIO or appearing before the Investigation Committee, the Respondent may be accompanied by a union representative or legal counsel. However, neither the Inquiry nor the Investigation is a trial-type

9

proceeding, and the union representative or legal counsel may not actively participate in the proceeding, such as by directing questions or answers or offering argument on behalf of the Respondent.

10.2. The Respondent may be suspended or removed from work under a research grant or contract by the President, in consultation with the Vice Chancellor for Research, any time following the commencement of an Inquiry regarding an Allegation of Research Misconduct about such research if, in the judgment of the President, such suspension or removal is warranted by the circumstances. Depending on developments in the Inquiry or Investigation, the President may, in consultation with the Vice Chancellor for Research, restore the Respondent to the work under the research grant or contract. The Vice Chancellor for Research or his or her designee will notify any applicable regulatory agency and/or research sponsor of any suspension, removal, or restoration decision under this section, and will send the President of the Research Foundation a copy of any such notice and any follow-up communications with the regulatory agency or research sponsor.

10.3. If the Respondent admits the accuracy of an Allegation of Research Misconduct in the course of an Inquiry or Investigation, the matter will be directly forwarded to the President for appropriate action, which may include disciplinary action under applicable collective bargaining agreements, the University Bylaws, or other applicable policies of the University.

10.4. Allegations that are brought in good faith may not be the basis of any Retaliation against the Complainant, even if the Allegations are not substantiated upon Inquiry or Investigation. All reasonable and practical efforts will be undertaken, as appropriate, to protect or restore the position and reputation of any Complainant and any witness or other individual involved in a Research Misconduct Proceeding, and to counter potential or actual Retaliation against such individuals.

10.5. The RIOs, members of the Investigation Committee, the President and all others responsible for carrying out any part of a Research Misconduct Proceeding, the Vice Chancellor for Research, and the University Director for Research Compliance:

a) will take precautions to ensure that they do not have real or apparent personal, professional, or financial conflicts of interest with, or biases against, any Respondent, any Complainant, or any witness in a Research Misconduct Proceeding;

b) will at all times conduct their activities related to the implementation of this Policy in a fashion that is consistent with their obligations under applicable federal, state, and local laws, rules, and regulations; and

10

    c) may request the assistance of legal counsel from the University's Office of the General Counsel during the course of their activities related to the implementation of this Policy.

11. RECORD KEEPING

The University has a continuing obligation under this Policy to ensure that it maintains adequate records of a Research Misconduct Proceeding. The RIO will maintain in a secure manner sufficiently detailed documentation of each Inquiry, including related Research Records and Evidence, and the University Director for Research Compliance will maintain in a secure manner sufficiently detailed documentation of each Investigation, including related Research Records and Evidence, for seven years after (a) the completion of the Research Misconduct Proceeding or (b) the completion of any regulatory agency or research sponsor proceeding involving the Allegations of Research Misconduct, whichever is later, in order to permit a later assessment by the regulatory agency or research sponsor or otherwise. To the extent that the RIO forwards such original detailed documentation of an Inquiry to the Office of the Vice Chancellor for Research in connection with an Investigation, the University Director for Research Compliance will be responsible for maintaining such documentation for the period provided in this section.

12. DEFINITIONS

    12.1. *Allegation* means a disclosure of possible Research Misconduct through any means of communication. The disclosure may be by written or oral statement or other communication.

    12.2. *College* means an educational unit of the University, including all senior colleges and community colleges, the Graduate School and University Center (including, without limitation, the School of Professional Studies, the Graduate School of Journalism, and the CUNY School of Public Health), the City University School of Law, and the University's Central Office (which, for purposes of this Policy, includes the University's Advanced Science Research Center).

    12.3. *Complainant* means a person who makes an Allegation of Research Misconduct.

    12.4. *Evidence* means any document, tangible item, or testimony offered or obtained during a Research Misconduct Proceeding that tends to prove or disprove the existence of an alleged fact.

    12.5. *Fabrication* means making up data or results and recording or reporting them.

    12.6. *Falsification* means manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record.

12.7. *Inquiry* means preliminary information-gathering and preliminary fact-finding to determine whether an Allegation has substance and if an Investigation is warranted. An Investigation must be undertaken if the Inquiry determines the Allegation has substance.

12.8. *Investigation* means the formal development, examination, and evaluation of a factual record to determine whether Research Misconduct has taken place, to assess its extent and consequences, and to evaluate appropriate action.

12.9. *Investigation Committee* means the committee consisting of at least three members of University staff or tenured faculty at any College actively involved in research in the same field as the Respondent or a related field who are appointed by the Vice Chancellor for Research to investigate charges of Research Misconduct against faculty, staff, post-doctoral associates, and/or students.

12.10. *Legal Affairs Designee* means the individual at each College designated by the President to deal with legal issues at the College in conjunction with the University's Office of the General Counsel.

12.11. *Plagiarism* means the appropriation of another person's ideas, processes, results, or words without giving appropriate credit.

12.12. *Policy* means this Policy regarding the Disposition of Allegations of Research Misconduct.

12.13. *Preponderance of the Evidence* means proof by information that, compared with that opposing it, leads to the conclusion that the fact at issue is more probably true than not.

12.14. *President,* except for the President of the Research Foundation, means the President or Dean of each College, as applicable. For purposes of this Policy, the Chancellor or his or her designee will be deemed to be the President of the University's Central Office.

12.15. *Research Foundation* means the Research Foundation of The City University of New York.

12.16. *Research Integrity Officer* ("RIO") means the official at each College designated by the President of the College after consulting with the appropriate faculty governance body at the College to be responsible for receiving Allegations of Research Misconduct, determining whether such Allegations warrant Inquiries, conducting the Inquiries and preparing the Inquiry reports, recommending to the President whether or not Investigations are warranted, and assisting in the Investigations by the Investigation Committee.  The RIO must be an administrator or tenured faculty member at the College with experience in

research and will be provided appropriate training to carry out his or her responsibilities under this Policy.

12.17. *Research Misconduct* means Fabrication, Falsification, or Plagiarism in proposing or performing research, reviewing research, or in reporting research results. Research Misconduct does not include honest error or differences of opinion. A finding of Research Misconduct made under this Policy requires that: (a) there be a significant departure from accepted practices of the relevant research community; (b) the misconduct be committed intentionally, knowingly, or recklessly; and (c) the Allegation be proven by a Preponderance of the Evidence.

12.18. *Research Misconduct Proceeding* means any action related to alleged Research Misconduct taken under this Policy, including but not limited to, determinations of whether or not an Inquiry is warranted, Inquiries, Investigations, and regulatory agency or research sponsor oversight reviews, hearings, and administrative appeals.

12.19. *Research Record* means the record of data or results that embody the facts resulting from a research inquiry, including, but not limited to, research proposals, laboratory records, both physical and electronic, progress reports, abstracts, theses, oral presentations, internal reports, journal articles, and any documents and materials provided in the course of a Research Misconduct Proceeding.

12.20. *Respondent* means the person against whom an Allegation of Research Misconduct is directed or who is the subject of a Research Misconduct Proceeding.

12.21. *Retaliation* means an adverse action taken against a Complainant, witness, or other participant in a Research Misconduct Proceeding in response to (a) a good faith Allegation of Research Misconduct, or (b) good faith cooperation with a Research Misconduct Proceeding.

12.22. *University* means The City University of New York.

12.23. *Vice Chancellor for Research* means the University's Vice Chancellor for Research. If there is a vacancy at any time in the position of Vice Chancellor for Research, the University's Executive Vice Chancellor for Academic Affairs or his or her designee will assume the responsibilities assigned to the Vice Chancellor for Research under this Policy. Similarly, if there is a vacancy at any time in the position of *University Director for Research Compliance*, the Vice Chancellor for Research or his or her designee will assume the responsibilities assigned to the University Director for Research Compliance under this Policy.

Policy approved by the Board of Trustees on 3/2/2015, amending prior policy approved on 6/25/2007.