# EXHIBIT 7

FD-302 (Rev. 5-8-10)



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry   04/10/2025

ANUJ SHARMA, date of birth ▮▮▮▮▮▮▮ ▮▮, email ▮▮▮▮▮▮a@hhs.gov, telephone number ▮▮▮▮-7629, was interviewed in Rockville, Maryland. Also participating in the interview were the following: FBI Special Agent Jeffrey Weeks; Department of Justice representatives Andrew Tyler and Vasanth Sridharan; and Health and Human Services, Office of Research Integrity representatives Robyn Littman, Sheila Garrity, and Loc Nguyen-Khoa. After being advised of the identities of the interview participants and the nature of the inquiry, SHARMA provided the following information:

SHARMA holds a bachelor's degree in microbiology, a master's degree in applied microbiology and biotechnology, and a PhD in virology.

SHARMA started his professional career in 2004 as a doctoral candidate at the Uniformed Services University of the Health Sciences (hereinafter "USUHS").

SHARMA finished his PhD in 2007 and conducted his postdoctoral research in virology, radiation biology, and traumatic brain injury at USUHS. SHARMA then became an Assistant Professor at USUHS.

In 2020, SHARMA moved from USUHS to the U.S. Department of Health & Human Services' Office of Research Integrity ("ORI"). SHARMA's initial and current position title is Scientist Investigator in the Division of Investigative Oversight.

SHARMA has experience with NIH grants, having submitted a few and being granted one in 2016/2017. SHARMA is familiar with the NIH grant application process.

SHARMA has some research experience in the area of neuroscience. SHARMA focused on encephalitis in his animal-based studies. SHARMA also researched traumatic brain injury by studying behavior responses in animal subjects with brain injuries.

SHARMA has never done research on Alzheimer's Disease.

Investigation on   04/01/2025   at   Rockville, Maryland, United States (In Person)

File #   318D-WF-3481291                                    Date drafted   04/09/2025

by   Jeffrey Weeks

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

USDOJ6-0000000089

```
318D-WF-3481291
                    (U) Interview of ANUJ SHARMA on April 1,
Continuation of FD-302 of  2025                                            , On  04/01/2025 , Page  2 of 6
```

SHARMA has extensive experience with western blotting, which he performed in connection with his research on a regular basis from approximately 2004 to 2020.

As an investigator at ORI, SHARMA's job is to investigate research misconduct. ORI can receive allegations of misconduct in several different ways including via the ORI email intake, from a 3rd party, or from the NIH. Once ORI is in possession of an allegation, ORI assists in evaluating the allegation. If the allegation checks out, ORI will send the allegation to the institution where the alleged misconduct was performed. ORI can request additional information from the institution, which will then conduct either an assessment or the more formal inquiry. ORI works mainly as oversight to ensure the institution conducts a proper investigation, follows procedural steps, and the respondent receives fair handling in the investigation.

When an institution's investigation is ongoing, ORI does not engage with the respondent. ORI works with the institution to provide a respondent with needed information related to the institution's investigation.

Once complete, the institution will send its inquiry report to ORI. If ORI is not completely satisfied with an institution's work, ORI will inform the institution of those shortcomings for the institution to make necessary corrections. Corrective actions include following up with institution to have them retract inaccurate information. If an investigation is not salvageable, ORI will work with the institution to ensure future cases are investigated properly.

If ORI finds issues with the institution's investigation, ORI will advise the institution on proper procedures for conducting investigations.

ORI will engage with the respondent after the institution completes its investigation.

The three steps of the ORI process are assessment, inquiry, and investigation, with the investigation stage determining if misconduct occurred. Misconduct addresses the factors of intentionality and culpability. Falsification must be done knowingly, and ORI must be able to identify who performed the misconduct to establish culpability. If no culpability evidence exists, ORI can decline to pursue the case for research misconduct.

An assessment is the stage in which ORI decides if the allegation merits moving forward. If the allegations are sufficient, ORI will request the institution conduct an inquiry. The institution must then decide if it will

conduct an inquiry or an investigation or neither. Once determined, ORI will decide if it agrees with the institution's determination.

If an allegation comes to the institution rather than ORI, the institution will do an assessment or inquiry. If the institution decides an investigation is not necessary, then the institution is not required to notify ORI.

If the institution goes forward with an investigation, it must provide ORI with a copy of the inquiry finding prior to moving forward with the investigation.

For universities to be eligible for maintaining compliance with ORI's Assurance Program, which is required for universities to obtain public health funding, institutions must notify ORI of how many assessments and inquiries they conduct in a given reporting period.

Many reliable referrals come from NIH reviewers during the grant process, which occurs before a grant is approved.

If an institution conducts a full-blown investigation, ORI receives a copy of the investigation report and an ORI Research Integrity Officer assists the institution in that investigation as needed. Active Oversight Review is the process in which a Research Integrity Officer reviews the report. After oversight is complete, assuming there are no glaring issues with the report, ORI will examine the evidence uncovered in the investigation and provide oversight independent of the institution's findings. Sometimes ORI agrees with the institution's findings and sometimes it does not. During an oversight review, ORI may ask the institution to re-do an investigation in whole or in part. If ORI agrees with the institution on findings of research misconduct and concludes that the respondent is a threat to public research, ORI can submit a separate public health service finding of research misconduct and publish that publicly. ORI can ask a respondent if they agree with findings. If the respondent agrees with the findings, a supervision agreement may be reached with the respondent for a fixed period of time. During that period, the respondent may not serve on a PhD advisory committee. During that period, all data generated from the lab affiliated with the respondent needs to be separately certified.

If a respondent does not accept the findings of ORI, ORI may work with their Office of General Counsel to prepare a charging letter which can ultimately lead to debarment.

The respondent can also submit to a voluntary exclusion in which the respondent states they will not pursue public health funding in the future.

318D-WF-3481291

Continuation of FD-302 of  (U) Interview of ANUJ SHARMA on April 1, 2025 , On 04/01/2025 , Page 4 of 6

As a scientist investigator, SHARMA is involved in all phases of the ORI process he described above.

In the event a respondent is debarred, he or she can appeal that debarment to an Administrative Law Judge.

ORI does not suspend or debar; those actions are handled by a separate part of HHS.

ORI does not perform on-site investigative steps at institutions.

When an investigative report comes in, ORI obtains all underlying data associated with the institution report and then conducts an independent review to verify the institution's results. Scientist investigators conduct image analysis and take other investigative actions to verify institution results.

Findings of misconduct do occur. If ORI cannot establish culpability due to poor data management practices, ORI can make recommendations to direct the institution to make organizational changes but cannot require the institution to enact those changes.

No set process exists for ORI to make referrals to the HHS Office of Inspector General.  However, ORI does meet with HHS OIG. HHS OIG has access to ORI's database but generally does not access it.

It is very common for western blots to be involved in misconduct allegations because they are so commonly used. Western blotting is the most common, cheapest, and easiest way to look at certain data.

Comparative density is what is important in a western blot, so doing a selective adjustment to a band represents manipulation because it changes what the image represents.

If a change in western blot data changes what is being told to the audience, that change represents falsification and fabrication. If, for example, someone puts a western blot in an application that comes from an unrelated experiment, that would represent falsification and fabrication.

SHARMA is familiar with JCB guidelines related to preparation and editing of western blots.

Splicing blots together can be considered fabrication if the underlying data shows the spliced bands come from two different experimental conditions. Splicing does not necessarily represent falsification but can be an

indicator of falsification. Non-disclosure of splicing does not by itself constitute research misconduct.

The JCB standards originate from a general understanding of how experiments work.

Magnification and comparison of backgrounds is an acceptable way to identify similarities and differences of background artifacts.

It is possible to identify identical pixelation in two image backgrounds to establish image manipulation. One important caveat is that a given piece of equipment could create consistent pixelation across all images it produces if, for example, it has a smudge on the scanner, so this needs to be disaggregated from sample-specific pixelation.

ORI uses Photoshop and Illustrator and PowerPoint. ORI examines the contrast and brightness adjustments as part of their analysis.

ORI uses the "Curves" function in Photoshop in its analysis. If two images look similar, the "Curves" function can tell you how much adjustment was done until two different images begin to look the same. The "Curves" function edits multiple aspects of an image in conjunction, thereby adjusting the entire image in proportion. This function can be combined with gradient analysis.

ORI can use Photoshop's gradient map to identify common artifacts between two images. ORI also uses overlay analysis within gradient analysis to identify if a band is present within two images. This type of analysis will also reveal if obvious artifacts are present in two images.

SHARMA does not employ the use of histogram analysis, but this is an analytical technique available to him as a Scientist Investigator.

SHARMA is not familiar with JPEG error analysis.

SHARMA has heard of Image Twin, but ORI does not employ its use. Image Twin can be used to identify similarities between two images.

ORI will check if densitometry analysis matches the associated images, but this is not a routine analytical technique SHARMA applies. Some images do not lend themselves to densitometry analysis due to poor quality. SHARMA has never come across a case in which a poor-quality image allegedly produced clear densitometry. SHARMA would feel comfortable identifying images that, due to poor quality, cannot be used for densitometry analysis.

318D-WF-3481291

Continuation of FD-302 of  (U) Interview of ANUJ SHARMA on April 1, 2025 , On 04/01/2025 , Page 6 of 6

When ORI looks at evidence submitted along with an investigative report, ORI will typically examine the excel data associated with densitometry analysis to verify if the data are accurate. If, for example, the data contain clear errors, ORI would find this.

ORI does not employ the use of terminal digit calculations or analysis.

SHARMA is not familiar with the Government's case against Dr. WANG, other than being aware that WANG is a respondent in an ORI-associated investigation. SHARMA has not read anything about this matter.

SHARMA has not worked with LUND UNIVERSITY, AXIOM, or QUANTERIX.